# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

VINCENT PORTER,

  Petitioner,

v.

UNITED STATES OF AMERICA,

  Respondent.

       Cv. No. 10-2477-JPM-dkv
       Cr. No. 08-20111-JPM

---

## ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
## ORDER DENYING CERTIFICATE OF APPEALABILITY
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND
## ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

---

On June 23, 2010, Petitioner Vincent Porter ("Petitioner" or "Porter"), Bureau of Prisons registration number 22327-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee, filed a pro se Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"). (ECF No. 1.) On September 13, 2010, the United States (the "Government") filed a Response to Petitioner's § 2255 Motion. (ECF No. 9.) On February 11, 2011, Petitioner filed a Declaration in opposition to the Government's Response. (ECF No. 12-1.)

For the following reasons, Petitioner's § 2255 Motion is DENIED.

## I.  BACKGROUND

### A.  Criminal Case Number 08-20111

On March 18, 2008, a federal grand jury returned a one-count Indictment charging Porter with possession of a firearm after the conviction of a felony, in violation of 18 U.S.C. § 922(g). See Indictment at 1, United States v. Porter, No. 08-20111 (W.D. Tenn.), ECF No. 1. On January 7, 2009, Defendant pled guilty pursuant to a written plea agreement. See Minute Entry, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 25.

The plea agreement provided as follows:

> Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the attorney for the United States, the defendant VINCENT PORTER, and the attorney for the defendant have reached an agreement that contemplates the entry of a plea of guilty by the defendant in this case. The full and complete agreement is as follows:
>
> 1. VINCENT PORTER agrees that he will enter a voluntary plea of guilty to the indictment charging a violation of Title 18, United States Code, Section 922(g).
>
> 2. VINCENT PORTER agrees that he is pleading guilty because he is in fact guilty of the offense charged in the indictment.
>
> 3. VINCENT PORTER acknowledges that he has been advised of and does fully understand the following:
>
>    a. The nature of the charge to which the plea is offered and the maximum possible penalty provided by law;
>
>    b. That he has the right to be tried by a jury, and at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and,
>
>    c. That if he pleads guilty, there will not be a trial of any kind, so that by pleading guilty, he waives the right to a trial.

4.  The United States agrees to recommend a three-level reduction for acceptance of responsibility provided that the Defendant's conduct, up to and including the day of sentencing, continues to be consistent with acceptance of responsibility and he receives no enhancement for obstruction of justice.

5.  The United States agrees to recommend that VINCENT PORTER be sentenced at the low-end of the applicable guideline range as determined by the Court.

6.  The parties agree that a four (4) level enhancement under U.S.S.G. § 2K2.1(b)(5) is applicable in this case.

7.  VINCENT PORTER agrees that a guideline range sentence is a reasonable sentence in light of the facts of the case and the concessions made by the United States in this plea agreement. In addition, VINCENT PORTER agrees to be sentenced within his guideline range as determined by the Court.

    It is the intent of the parties that if the Court does not sentence VINCENT PORTER within his guideline range as determined by the Court, then the United States shall be released from this plea agreement.

8.  In consideration of VINCENT PORTER'S timely notification to the United States of his intent to enter this change of plea, and in consideration of his acceptance of responsibility as set out in paragraphs four, six, and seven, the United States agrees that it will not pursue prosecution against VINCENT PORTER for a violation of Title 18, United States Code, Section 924(c) as it relates to the events of November 24, 2007, which are also the basis of the indictment at bar.

9.  Should it be judged by the United States that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstructing or impeding justice from the date of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw his plea, the United States will be released from its obligations and would be free to argue for any sentence within statutory limits. Such a breach by the Defendant would not release the Defendant from this plea of guilty.

10. VINCENT PORTER agrees that this plea agreement constitutes the entire agreement between himself and the United States and that no threats have been made to induce him to plead guilty.

11. The parties understand and agree that there is no agreement between the parties concerning the fine, if any, to be imposed in this case.

12. By signing this document, VINCENT PORTER acknowledges he has read this agreement, has discussed it with his attorney, understands it, and affirms its terms and conditions.

See Plea Agreement, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 28.

During the change-of-plea hearing on January 7, 2009, the following exchanges took place between the Court, the attorneys, and Porter:

| | |
|---|---|
| The Court: | Mr. Porter, would you state please for the record your full name? |
| Defendant: | Vincent Lepreston Porter. |
| The Court: | Okay. I'm going to get you to spell your middle name. |
| Defendant: | L-E-P-R-E-S-T-O-N. |
| The Court: | How old are you? |
| Defendant: | Thirty years old. |
| The Court: | What is your date of birth? |
| Defendant: | 7-22-78. |
| The Court: | How far did you go in school? |
| Defendant: | To the 12th grade. |
| The Court: | Did you graduate? |
| Defendant: | No, sir. |
| The Court: | Where were you in school? |
| Defendant: | Hamilton High School. |

| | |
|---|---|
| The Court: | Hamilton. Why did you leave school? |
| Defendant: | I had to do a few days in Tall Trees. |
| The Court: | Sure. Did you get your GED? |
| Defendant: | No, sir. |
| The Court: | Have you ever taken your GED? |
| Defendant: | Yes, sir, but I had took it at Shelby County Correctional Center. |
| The Court: | Right. |
| Defendant: | But I had got out before I got it. |
| The Court: | Okay. So you still need to finish that, okay. Let me ask about your reading and writing skills since you haven't finished high school. Would you say that you're a very good reader, not so good reader, pretty good reader? |
| Defendant: | Yes, sir. |
| The Court: | Pretty good? Which one of the three, very good, not so good, or pretty good? |
| Defendant: | Pretty good. |
| The Court: | Do you read very much? |
| Defendant: | Yes, sir. |
| The Court: | What kinds of things do you read? |
| Defendant: | I read up on a lot of different things, I just like reading. |
| The Court: | Do you read books or do you read magazines or newspapers, what do you read? |
| Defendant: | Books, magazines, newspapers. |
| The Court: | What's the last book you read, if you remember, or what was it about? |
| Defendant: | I can't quite recall because I been reading a lot of magazines and newspapers. |

| | |
|---|---|
| The Court: | Okay. Do you read the newspaper every day? |
| Defendant: | Yes. |
| The Court: | What is your favorite part of the newspaper to read? |
| Defendant: | The first part of it. |
| The Court: | You like to read the first section? |
| Defendant: | Yeah. |
| The Court: | Front page, that sort of thing? |
| Defendant: | Yes. |
| The Court: | Okay. There's a story that they're putting on now, a whole series, do you remember what that series is they have in the Commercial Appeal this week? |
| Defendant: | No, I haven't read that part yet. |
| The Court: | Okay. Because it has got a series about Mayor Herenton, did you see that series? |
| Defendant: | No, one of my friends be getting a newspaper every day, and he just started back getting them yesterday. |
| The Court: | So you didn't get a chance to read it? |
| Defendant: | No, sir. |
| The Court: | Well, let me ask this: If you have an important document to read, do you read it yourself or do you get somebody else to help you with it? |
| Defendant: | No, I read it myself. |
| The Court: | In this case, there are some important documents, there's a plea agreement, there's an indictment, did you read those yourself? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand them? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | If you had any questions about them, would you have asked Mr. Hall about them? |
| Defendant: | Yes, sir. |
| The Court: | Did he explain any questions you had about them? |
| Defendant: | Yes, he explained everything to me. |
| The Court: | Do you fully understand the charges against you and the terms of the plea agreement in this case? |
| Defendant: | Yes, sir. |
| The Court: | Let me ask about your health, are you currently under the treatment of any physician, any psychiatrist, or psychologist? |
| Defendant: | Excuse me? |
| The Court: | Are you under the treatment of any doctor, psychologist, psychiatrist, or physician, anybody at all? |
| Defendant: | No, sir. |
| The Court: | Are you taking any medication at all? |
| Defendant: | No, sir. |
| The Court: | Are you currently under the influence of anything, any drugs, pills, alcohol, medication, anything at all? |
| Defendant: | No, sir. |
| The Court: | Have you received a copy of the indictment in this case, that is the charge against you, and have you reviewed those charges with Mr. Hall in this case? |
| Defendant: | Yes, sir. |
| The Court: | Now, Mr. Hall has been your attorney in this case, have you been fully satisfied |

|              |                                                                                                  |
|--------------|--------------------------------------------------------------------------------------------------|
|              | with his counsel, his representation and his advice to you in this case?                         |
| Defendant:   | Yes, sir.                                                                                        |
| The Court:   | I have been handed a plea agreement. Did you have an opportunity to read and discuss the plea agreement with your counsel before you signed it? |
| Defendant:   | Yes sir.                                                                                         |
| The Court:   | Does the plea agreement represent the complete agreement between you and the government, the entire agreement? |
| Defendant:   | Yes, sir.                                                                                        |
| The Court:   | Do you understand the terms of the plea agreement?                                               |
| Defendant:   | Yes, sir.                                                                                        |
| The Court:   | Has anyone made any promise or assurance to you that is not in the plea agreement to persuade you to accept the terms of the plea agreement? |
| Defendant:   | No, sir.                                                                                         |
| The Court:   | Has anyone threatened you in any way to persuade you to accept the plea agreement?               |
| Defendant:   | No, sir.                                                                                         |
| The Court:   | I will have the government go over the plea agreement.                                           |

. . . .

|              |                                                                                                  |
|--------------|--------------------------------------------------------------------------------------------------|
| The Court:   | Mr. Porter, Ms. Johnson has just read over the plea agreement as it was presented to me. Is that the agreement as you understand it? |
| Defendant:   | Yes, sir.                                                                                        |
| The Court:   | Has anyone made any other promise to you in order to get you to plead guilty?                    |
| Defendant:   | No, sir.                                                                                         |

| | |
|---|---|
| The Court: | Has anyone attempted to force you to plead guilty in any way? |
| Defendant: | No, sir. |
| The Court: | Are you pleading guilty of your own free will? |
| Defendant: | Yes, sir. |
| The Court: | Are you pleading guilty because you are, in fact, guilty of the offense charged? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand that the offense to which you're pleading guilty is a felony offense, and if the court accepts your plea of guilty you will be adjudicated a felon, and as such, you will give up valuable civil rights, including the right to vote, the right to serve on a jury, the right to possess any kind of firearm and, of course, the right to hold public office? |
| Defendant: | Yes, sir. |
| The Court: | The maximum penalty in this case is ten years in prison, a $250,000 fine, three years of supervised release, a hundred dollar special assessment, but if you have three prior convictions of violent felonies or serious drug offenses, then it changes and becomes no less than 15 years in prison and not more than life in prison, a fine of $250,000, five years of supervised release and a 100-dollar special assessment. Do you understand the possible maximum penalties in this case? |
| Defendant: | Yes, sir. |
| The Court: | Do you therefore understand what can happen to you as a result of your guilty plea? |
| Defendant: | Yes, sir. |

| | |
|---|---|
| The Court: | Have you and Mr. Hall talked about how the advisory sentencing guidelines may apply to you in this case? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand that the court will not be able to determine the advisory guideline range for you in this case until after the presentence report has been completed and after you and the government have both had an opportunity to review that report and object to the facts in the report and the proposed application of the guidelines in that report? |
| Defendant: | Yes, sir. |
| The Court: | Do you also understand that the sentence that is actually imposed, the ultimate sentence may be different from any estimate of sentence that your counsel or government counsel or anyone else has given to you? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand that after your initial advisory guideline range has been determined, the court has authority in some circumstances to depart upward or downward from that range, and to examine other statutory sentencing factors, including those contained in 18 U.S.C., Section 3553(a) that may result in the imposition of a sentence that is either greater or less than the advisory guideline sentence? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand that parole has been abolished in the federal system, so if you are sentenced to prison, you will not be released on parole, you will go to prison? |
| Defendant: | Yes, sir. |
| The Court: | Do you also understand that under some circumstances, you or the government may |

|              |                                                      |
|--------------|------------------------------------------------------|
|              | have a right to appeal any sentence that is imposed? |
| Defendant:   | Yes, sir.                                             |

The Court: Do you also understand that you have a right to plead not guilty to the offense charged in the indictment and to persist in that plea? You have a right to have a trial. You have a right to have a trial by an impartial jury. At that trial, you would be presumed by the law to be innocent and the government would have to prove your guilt beyond a reasonable doubt. You would have the right to the assistance of counsel for your defense, and you would have a right to have counsel appointed by the court, if necessary. And of course, you have a right to have counsel at trial and every other stage of the proceedings. You would have a right to see and hear all the witnesses against you and have those witnesses cross-examined in your defense. You would have a right to testify, if you wanted to at trial, but you would also have an absolute right not to testify; and if you chose not to testify, the fact that you did not testify could not and would not be used against you. You would also have a right to have witnesses required by subpoena to be present to testify in your defense. Do you understand that you have all of those rights in connection with a trial in this case?

Defendant: Yes, sir.

The Court: Do you understand that by entering a plea of guilty, if the court accepts that plea, there will not be a trial and you will have forever given up all of those rights?

Defendant: Yes, sir, I understand.

The Court: The indictment in this case provides that on or about November 24 of 2007, in the Western District of Tennessee, the defendant, Vincent Porter, having previously been convicted of a crime punishable by imprisonment for a term

11

exceeding one year, did knowingly possess
                    in and affecting interstate commerce a
                    firearm, that is an F.I.E. .38 special
                    semi-automatic pistol, in violation of
                    Title 18, United States Code, Section
                    922(g). Do you understand the charge
                    against you?

Defendant:          Yes, sir.

The Court:          The government would have to prove each
                    and every essential element of that
                    charge. For example, the government would
                    have to prove three things. First, that
                    you had previously been convicted of a
                    crime punished by imprisonment for a term
                    exceeding one year. The second thing the
                    government would have to prove is that you
                    knowingly possessed the firearm charged,
                    that is that you knew that you could
                    control it and you had the ability to
                    control it. The third thing they would
                    have to prove is that firearm traveled in
                    interstate commerce. That means that it
                    was at least at some point prior to the
                    time that you possessed it, it had crossed
                    a state line. Do you understand what the
                    government would have to prove in this
                    case?

Defendant:          Yes, sir.

The Court:          What do you say - what do you say happened
                    on November 24th of 2007 regarding this
                    gun, what happened?

Defendant:          I had fell asleep, I had fell asleep over
                    the wheel of a sports utility vehicle.

The Court:          Okay.

Defendant:          And I was waken up by two police officers.

The Court:          Where was the - where was the vehicle?

Defendant:          Parked in a parking space.

The Court:          Okay.

Defendant:          In some apartments in east Memphis.

The Court:      And near what - what were the streets it
                was close to?

Defendant:      Kirby Parkway.

The Court:      Kirby Parkway?

Defendant:      Yes.

The Court:      And do you remember the cross streets?

Defendant:      Kirby and Winchester.

The Court:      Kirby and Winchester. And was anybody else
                in the vehicle with you?

Defendant:      No, sir.

The Court:      Okay. Where was the gun?

Defendant:      It was in the armrest.

The Court:      Armrest?

Defendant:      Yes.

The Court:      Do you mean that it was in the one - you
                were in the driver's seat?

Defendant:      Yes, sir.

The Court:      Was it the one on your left?

Defendant:      There's nothing but one in the truck, it
                was located under the -

Attorney Hall:  I think he means the console.

The Court:      You mean the console?

Defendant:      Yes, sir.

The Court:      Because sometimes there's a little pocket
                there on the door side, but this is in the
                console?

Defendant:      Yes, sir.

The Court:      All right. Whose gun was it?

Defendant:      It was mine.

| The Court: | Okay. What does the government say the proof could have been? |
|---|---|
| AUSA Johnson: | Your Honor, on November the 24th of 2007, around 11:00 o'clock a.m., Memphis Police Department officers received a call to the Country Oaks Apartments, and it regarded a man who was slumped over the wheel of a Chevy Tahoe, a truck. The officers who arrived observed the truck, they observed the man in the truck apparently asleep or whatever his condition was. The truck was parked at an angle over two parking spaces. They approached, the truck was still running and apparently was in gear. They attempted by knocking on the windows to rouse the driver. Ultimately, they had to reach inside from the passenger's side and put the vehicle in park. The driver was Mr. Porter. He was finally awakened, and when the officers, I guess, looked at other things besides Mr. Porter, they saw some small baggies of marijuana sitting on the center console that was about 11.2 grams. When Mr. Porter got out of the truck, the officers observed another small baggy of marijuana fall from Mr. Porter's inner thigh area, another 1.8 grams. Mr. Porter was detained. Inside the center console, officers located a marijuana cigarette. Search incident to arrest, officers recovered two large baggies of Lortab pills, 200 tablets; four baggies of Ecstasy with a little over 230 tablets. All of these were individually tagged and wrapped with various amounts. There was another 9.2 grams of powder cocaine recovered, two digital scales, a handgun was recovered, which was the .38 special that is referenced in the indictment. It was loaded with two live rounds. It's referred to as a Deringer, but after examination, the manufacturer is this F.I.E. That was underneath the console. Organized Crime was called, an additional amount of powder cocaine, .54 grams was recovered in the – in a pocket on Mr. Porter and some other various residue. There was some receipts with Mr. Porter's name on it in the center console. Mr. Porter was transported to Organized Crime |

|                |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                     |
|----------------|---|
|                | Unit, he was Mirandized, he waived his Miranda rights and gave a statement essentially verifying the amounts of drugs, that they were his, and the handgun, specifically, I think he said it was actually his sister's handgun, but why did you have the gun, they asked, and he said it was in the truck for protection and it was late at night. And he explained where it was found in the truck. There was various amounts of cash found on Mr. Porter or in the truck. That's essentially those facts. The firearm in question, this .38 special semi-automatic pistol was examined by an agent with the Bureau of Alcohol, Tobacco and Firearms, and determined that it was, in fact, an F.I.E. .38 Special caliber Deringer. It was manufactured in Florida so it would be his opinion that at some point in time it traveled in interstate commerce. Mr. Porter, before November 24th, 2007, did have at least one felony conviction, and the events that I have just mentioned did occur here in the Western District of Tennessee. |
| The Court:     | Any objection or correction to the statement of facts? |
| Attorney Hall: | No, Your Honor. |
| The Court:     | Mr. Porter, you have heard all these things. Having heard all these things, how do you wish to plead to Count 1 of the indictment, do you wish to plead guilty or do you wish to plead not guilty? |
| Defendant:     | I plead guilty. |
| The Court:     | It is the finding of the court in the case of United States of America versus Vincent Porter that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea of guilty is therefore |

accepted, and the defendant is now adjudged guilty of that offense. I need to advise you that a written presentence report will be prepared to assist the court in sentencing in this case, and you will be asked to give information for that report. You're entitled to have your counsel present at any interview with the probation officer, if you wish. The court will permit both you and your counsel to read the presentence report and file in writing any objections to that report before the sentencing hearing, and both you and your counsel will have an opportunity to speak on your behalf at the sentencing hearing in the case.

See Change of Plea Hr'g Tr. 4:7-8:25, 11:10-21:4, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 41.

On June 23, 2009, the Court sentenced Porter to one hundred ten months (110) imprisonment, to be followed by a three-year term of supervised release. See Minute Entry, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 37. Judgment was entered on June 23, 2009. See Judgment, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 38. Porter did not pursue a direct appeal.

**B.    Civil Case Number 10-2477**

On June 23, 2010, Petitioner filed the instant § 2255 Motion alleging ineffective assistance of counsel prior to the guilty plea. (ECF No. 1 at PageID 1, 5.) Specifically, Defendant alleges that counsel's failure to file a motion to suppress illegally obtained evidence left him no option other than to enter a guilty plea. (Id. at PageID 5-6.) Porter alleges that the plea agreement restricted his "appeal rights" which is why he did not pursue a direct appeal. (Id. at PageID 5, 7, 11.)

16

## II.  LEGAL STANDARDS

### A.  Section 2255 Motions

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A prisoner seeking relief under § 2255 "must show (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." McPhearson v. United States, 675 F.3d 553, 559 (6th Cir. 2012) (internal quotation marks omitted). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

After a § 2255 motion is filed, it is reviewed by the court and, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." R. Governing § 2255 Proceedings 4 (2010). "If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The movant is entitled to reply to the Government's

response. R. Governing § 2255 Proceedings 5(e). The court may also direct the parties to provide additional information relating to the motion for relief. R. Governing § 2255 Proceedings 7.

Where a factual dispute arises during the review of a § 2255 motion, the district court "must hold an evidentiary hearing to determine the truth of the petitioner's claims." <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). A hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief because the petitioner's allegations "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Id.</u> (quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks omitted).

Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. <u>Smith v. United States</u>, 348 F.3d 545, 551 (6th Cir. 2003); <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion.").

A § 2255 motion "is not a substitute for a direct appeal." <u>Regalado v. United States</u>, 334 F.3d 520, 528 (6th Cir. 2003); <u>see also</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998). "Defendants must assert their claims in the ordinary course of trial

and direct appeal." <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir. 1996). Accordingly, constitutional claims that could have been raised on direct appeal, but were not, are barred unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. See <u>Vanwinkle v. United States</u>, 645 F.3d 365, 369 (6th Cir. 2011). Ineffective assistance of counsel in violation of the Sixth Amendment may constitute cause sufficient to excuse procedural default. See <u>Landrum v. Mitchell</u>, 625 F.3d 905, 916 (6th Cir. 2010) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 492 (1986)).

**B.   Ineffective Assistance of Counsel and Guilty Pleas**

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standard articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "(1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense." <u>Hodges v. Colson</u>, 711 F.3d 589, 605 (6th Cir. 2013) (citing <u>Stickland</u>, 466 U.S. at 687-88). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." <u>Strickland</u>, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not analyze whether, in fact, counsel's performance was deficient. <u>Id.</u>

In considering whether counsel's performance was deficient, the court must consider whether counsel's representation fell below

an "objective standard of reasonableness, based on prevailing professional norms." Hanna v. Ishee, 694 F.3d 596, 612 (6th Cir. 2012). Courts apply "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (internal quotation marks omitted). The petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Id. (internal quotation marks omitted).

To demonstrate that the deficient performance of counsel prejudiced the defense, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hodges, 711 F.3d at 606 (citing Strickland, 466 U.S. at 694). A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome; certainty of a different outcome is not required." Hanna, 694 F.3d at 613 (internal quotation marks omitted). It is not enough for a petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Richter, 131 S. Ct. at 787 (internal quotation marks omitted). The "errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 787-88.

"An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care." Id. at 788. Accordingly, "[s]urmounting

20

<u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473, 1485 (2010).

The two-part test stated in <u>Strickland</u> applies to challenges to guilty pleas based on the ineffective assistance of counsel. <u>See</u> <u>Hodges</u>, 711 F.3d at 609 (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." <u>Lockhart</u>, 474 U.S. at 56 (internal quotation marks omitted). To demonstrate prejudice "in the context of a challenge to a guilty plea," the petitioner need show that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hodges</u>, 711 F.3d at 610 (internal quotation marks omitted); <u>accord</u> <u>Padilla</u>, 130 S. Ct. at 1485 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## III. ANALYSIS

Porter argues that his counsel was ineffective in failing to seek the suppression of illegally obtained evidence and that, but for this ineffectiveness, Porter would not have pled guilty. (ECF No. 1 at PageID 5-6.) While Porter did not assert this claim on direct appeal, the claim is not procedurally defaulted as a § 2255 motion "is generally the preferred mode for raising a claim of

ineffective assistance of counsel." <u>United States v. Ferguson</u>, 669
F.3d 756, 762 (6th Cir. 2012).

The Court first considers the validity of Porter's guilty plea
and then considers whether there is any merit to Porter's assertion
that his counsel provided ineffective assistance during the plea
process.

### A.    Validity of the Guilty Plea

"The longstanding test for determining the validity of a guilty
plea is whether the plea represents a voluntary and intelligent
choice among the alternative courses of action open to the
defendant." <u>Lockhart</u>, 474 U.S. at 56 (internal quotation marks
omitted). "[A] proper, clear, and thorough plea colloquy" cures "any
misunderstanding [the defendant] may have had about the consequences
of his plea." <u>Ramos v. Rogers</u>, 170 F.3d 560, 561 (6th Cir. 1999).
<u>See also</u> <u>Baker v. United States</u>, 781 F.2d 85, 92 (6th Cir. 1986). A
defendant's "solemn declarations in open court carry a strong
presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74
(1977). Accordingly, "[w]hen a criminal defendant has solemnly
admitted in open court that he is in fact guilty of the offense with
which he is charged, he may not thereafter raise independent claims
relating to the deprivation of constitutional rights that occurred
prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411
U.S. 258, 267 (1973).

Based on the plea colloquy and the applicable law, Porter
knowingly, intelligently, and voluntarily entered a plea of guilty.
First, by signing the plea agreement, Porter expressly acknowledged

that he was pleading guilty because he was guilty. In exchange for his admission of guilt, he received a three-level reduction for acceptance of responsibility and the Government agreed not to prosecute him for a violation of 18 U.S.C. § 924(c) as it related to the events of November 24, 2007, and recommended that Porter receive a sentence at the lowest end of the applicable sentencing guideline range. See supra pp. 2-4; accord Plea Agreement, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 28.[1]

Second, Porter acknowledged in open court, under oath, that he understood the consequences of his guilty plea. As demonstrated in the Change of Plea Hearing Transcript excerpted above, the Court thoroughly questioned Porter about his understanding and acceptance of the plea agreement; Porter was advised of his right to proceed to trial and assert his alleged innocence; Porter testified that he understood the charged crime and that he had read and understood the plea agreement; and Porter testified that no one had attempted to force him to plead guilty and that he was pleading guilty of his own free will. See supra pp. 8-11; accord Change of Plea Hr'g Tr., Porter, No. 08-20111 (W.D. Tenn.), ECF No. 41. Furthermore, the Court described the elements of Porter's offense; Porter admitted possession and ownership of the weapon; and the Assistant United States Attorney related Porter's underlying conduct in possessing the firearm. See supra pp. 12-15; accord Change of Plea Hr'g Tr., Porter, No. 08-20111 (W.D. Tenn.), ECF No. 41. In the instant case,

---

[1]    The plea agreement did not contain a waiver of Porter's right to appeal his sentence.

this thorough plea colloquy would have "cured any misunderstanding" that Porter may have had regarding the consequences of his plea.

Third, by voluntarily pleading guilty, Porter admitted the factual basis for the prosecution's case against him. He cannot now "invalidate" his guilty plea by making a self-serving claim that his counsel was ineffective, particularly when the record shows he was fully informed in open court about the consequences of his plea and fully admitted that the Government's factual basis was true and correct.

The Court, therefore, concludes that Porter's guilty plea was knowingly, intelligently, and voluntarily entered.

## B. Ineffective Assistance of Counsel

Porter alleges that his counsel was ineffective in failing to file a motion to suppress illegally obtained evidence, and had counsel filed such a motion, Porter would not have entered a plea of guilty. (ECF No. 1 at PageID 5.) To demonstrate that his counsel was inefficient during the plea process, Porter must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases" and that, had counsel given competent advice, "he would have pleaded not guilty and insisted on going to trial." Lockhart, 474 U.S. at 56, 60 (internal quotation marks omitted).

The Court finds that Porter cannot demonstrate that, had his lawyer filed a motion to suppress, Porter "would have pleaded not guilty and insisted on going to trial." First, the evidence of Porter's guilt was overwhelming and the plea agreement negotiated by

Porter's counsel was extremely beneficial to Porter. Porter made a well-reasoned decision to plead guilty to obtain the Government's recommendations for a reduction for acceptance of responsibility and a sentence at the low end of the guidelines range and to avoid further prosecutions for drug trafficking of marijuana, cocaine, Ecstasy, and Lortab rather than file a frivolous motion to suppress. Had Porter not pled guilty, he risked prosecution in both state and federal courts and multiple consecutive sentences well exceeding the 110-month sentence of imprisonment that he received. Accordingly, Porter has not convincingly shown that "a decision to reject the plea bargain would have been rational under the circumstances." See Padilla, 130 S. Ct. at 1485.

Second, Porter's allegation that he had no recourse other than to plead guilty because counsel did not file a suppression motion is not supported by the record. The Government has provided the affidavit of Attorney Scott Hall to rebut Porter's contention that he wanted to file a motion to suppress evidence. Hall's affidavit states:

> I represented Vincent Porter in case number 08-20111 in the United States District Court for violating 18 U.S.C. § 922(g). I also represented Vincent Porter in Shelby County Criminal Court Division VII on three indictments (08-02608, 08-02609, 08-01377). Two of the state court indictments were for multiple Class B felonies, Class D felonies, and a Class E felony. Because Mr. Porter had been out on bond when the offenses were committed he was facing 12 to 20 years on each of the Class B felonies consecutively as a Range II offender. During plea negotiations with Assistant United States Attorney Stephanie Johnson, Mrs. Johnson advised that the government was seeking a 21 U.S.C. § 841 indictment against Mr. Porter and possibly an 18 U.S.C. § 924(c)

indictment for possessing a firearm in connection with a drug offense.

After reviewing all discovery in Mr. Porter's state and federal cases it was apparent that the likelihood of conviction was great. Mr. Porter and I explored and discussed any possible suppression issues regarding his federal case. My opinion as well as Mr. Porter's opinion was that there was no merit for any suppression motion. The facts of his federal case were as follows. Mr. Porter was found passed out behind the wheel of a running vehicle while it was in gear with his foot on the brake. Officers had to knock on the window for several minutes to wake Mr. Porter. Officers observed a bag of marijuana on Mr. Porter's lap. That observation coupled with Mr. Porter's consent justified a vehicle search. The search yielded 11.2 grams of marijuana, 188 Ecstasy pills, 200 Lortab pills, 9.2 grams of cocaine, two digital scales, and a .38 special handgun loaded with two live rounds. Mr. Porter expressly stated that he did not wish to file any suppression motions. He understood clearly his predicament and always intelligently made decisions. I am very surprised he has filed this frivolous claim.

Based on the above facts, I negotiated a settlement with both the United States and the Shelby County District Attorney's Office. In exchange for Mr. Porter's plea to the 922(g) indictment the United States would not seek the additional indictments mentioned above and the State would dismiss all pending indictments against Mr. Porter. This was a great deal in light of the exposure Mr. Porter faced in both jurisdictions. I did not hesitate in advising Mr. Porter to accept the deal. Moreover, Mr. Porter did not hesitate in accepting the deal because he was well aware of the potential of spending many more years in state and federal prison than only 110 months.

(ECF No. 9-1.)

Porter has filed his own affidavit in rebuttal. (ECF No. 12-1.) Porter disagrees that he and his counsel explored and discussed possible suppression issues, disagrees that the arresting officers saw the bag of marijuana on his lap before his arrest, disagrees that he consented to the search of his vehicle, and disagrees that he told counsel he did not want to file a suppression motion. (<u>Id.

¶¶ 2-5.) Porter admits, however, that he was asleep in a truck still in gear with the engine running and his foot on the brake when police officers were summoned. (ECF No. 1 at PageID 5.) Porter further admits that a bag of marijuana fell from his lap to the ground when he exited the vehicle. (Id.)

Porter's instant version of events, however, is not supported by the record in his criminal case. Porter admitted his guilt to the following facts contained in the Government's offer of proof during the hearing on Porter's change of plea: officers observed baggies of marijuana on the center console of the vehicle before Defendant got out of the truck, see Change of Plea Hr'g Tr. 18:6-8, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 41; his vehicle was searched incident to his arrest and additional drugs, scales, and the handgun were discovered, id. 18:13-24; and Porter was taken to the Organized Crime Unit where he waived his Miranda rights and gave a confession admitting that the drugs were his and that he had the handgun for protection, id. 19:3-10. These facts have not been rebutted by Porter.

Finally, Porter's behavior does not support his position that he would not have pled guilty but for counsel's failure to file a motion to suppress. Porter testified that he was fully satisfied with his counsel, counsel's representation, and counsel's advice in this case. See supra pp. 7-8; accord Change of Plea Hr'g Tr. 8:3-6, Porter, No. 08-20111 (W.D. Tenn.), ECF No. 41. Porter did not raise counsel's failure to file a suppression motion before the entry of his plea, during sentencing, or on direct appeal. Porter does not

allege that he told counsel the version of events related in this motion. He does not allege that he requested counsel to raise the issue on appeal. Porter did not attempt to withdraw his guilty plea at any point in the proceedings in the district court. Furthermore, Porter does not allege that he requested counsel to assist him in withdrawing his guilty plea.

Porter has failed to establish that he would not have pled guilty in this case had counsel taken any different action. Accordingly, Porter cannot sustain an ineffective-assistance-of-counsel claim. The Court, therefore, concludes that Porter's § 2255 Motion, together with the files and record in this case, "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Porter's conviction and sentence are valid and, therefore, his § 2255 Motion is DENIED.

**IV. APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). No § 2255 petitioner may appeal without this certificate. U.S.C. § 2253(c)(1). A "substantial showing" involves demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000)

(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 & n.4 (1983)). A court, however, "should not decline the application of a [certificate of appealability] merely because it believes the applicant will not demonstrate an entitlement to relief." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (internal quotation marks omitted). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." <u>Id.</u> at 342.[2]

In this case, for the reasons previously stated, the issues raised by Porter lack substantive merit. Accordingly, he cannot present a question of some substance about which reasonable jurists could differ. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also

---

[2]     The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." <u>Miller-El</u>, 537 U.S. at 337. Instead, the COA requirement implements a system of "differential treatment for those appeals deserving of attention from those that plainly do not." <u>Id.</u>

provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is, therefore, CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is DENIED. If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

## V.  CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion is DENIED.

**SO ORDERED** this 10th day of July, 2013.

s/ Jon P. McCalla
JON P. McCALLA
CHIEF US DISTRICT JUDGE